**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

|  |  |
|---|---|
| E.R., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22-cv-04482-DCN |
| vs. ) | |
| ) | **ORDER** |
| BEAUFORT COUNTY SCHOOL DISTRICT, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The following matter is before the court on defendant Beaufort County School District's (the "District") motion to compel and/or to increase the number of permissible interrogatories, ECF No. 13. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This case arises from alleged sexual assaults—ranging from forced fellatio to vaginal and anal rape—perpetrated by at least three different male students against E.R. while she was a minor. After each incident, E.R. and/or her mother reported the incidents to administrators, guidance counselors, and coaches at Bluffton High School who all allegedly took no action. Word of the sexual assaults spread after each incident and E.R. was subjected to bullying, harassment, and sexual harassment by other students. As a result of these incidents, and based on her doctor's recommendation, E.R. left school and enrolled in Homebound Instruction. But the District allegedly failed to provide adequate math instruction in that format, and E.R. ultimately transferred to Hilton Head Island High School. This lawsuit followed.

On November 4, 2022, E.R. filed a complaint in the Beaufort County Court of Common Pleas. E.R. v. Beaufort Cnty. Sch. Dist., No. 2022-CP-07-02157 (Nov. 4, 2022). While the case was still in state court, E.R. filed her first amended complaint on November 17, 2022. ECF No. 1-1, Compl. On December 12, 2022, the District removed this action from state court. ECF No. 1. On March 21, 2023, the District filed a motion styled as a motion to compel and/or increase the number of permissible interrogatories. ECF No. 13. E.R. responded in opposition on March 27, 2023, ECF No. 14, and the District replied on April 4, 2023, ECF No. 15. The court held a hearing on the motion on May 19, 2023. ECF No. 18. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Rather, information is relevant and discoverable if it relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th

Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III.   DISCUSSION

On January 25, 2023, the District served its first set of interrogatories and requests for production. ECF No. 13-2. In the first set of interrogatories, the District included seventeen numbered interrogatories. Id. E.R. argues that the District's interrogatories "far exceeded the limit of 25" set forth by Fed. R. Civ. P. 33(a) because some of the interrogatories are multi-part questions, and each sub-part functions as a distinct interrogatory. ECF No. 13-3 at 3. E.R. initially requested that the District "re-serve [its] interrogatories" so that they did not exceed the limit of twenty-five. Id. at 1. The District declined to withdraw its first set of interrogatories, arguing that if necessary, it would seek leave from the court to serve additional interrogatories. Id. E.R. then served her discovery responses on February 24, 2023, but provided a blanket objection to the

interrogatories for exceeding the number of interrogatories allowed by Rule 33(a)(1).[1] ECF No. 13-4. Based on E.R.'s failure to answer, the District filed the instant motion, and E.R. responded to the motion, maintaining that the District exceeded the number of permitted interrogatories.

Rule 33(a) provides that a party may not file more than twenty-five interrogatories, including subparts, without obtaining leave of court or written stipulation. The District claims that it only served seventeen interrogatories on E.R., ECF No. 15 at 3, while E.R. argues that including the subparts, the District served "approximately 33 discrete interrogatories," ECF No. 14 at 2. The court first determines how many interrogatories were served by resolving the disputed subpart issue. Finding that the District has functionally served twenty-two interrogatories, the court ends the inquiry there with the instruction that E.R. be compelled to respond to those interrogatories, and the District will be permitted to serve three more interrogatories at most.

---

[1] The parties dispute whether E.R.'s blanket objection was proper. E.R. maintains that based on a ruling by a sister court, counsel for E.R. could not object to particular interrogatories or E.R. would waive all objections. E.R. is partially correct. In the order that E.R. refers to, the court ruled that the plaintiffs waived their objections to a set of interrogatories by answering them, i.e., they could not "answer some interrogatories and object to the ones to which it does not want to respond." United States ex rel. Adams v. Remain at Home Senior Care, LLC, 2022 WL 168783, at *3 (D.S.C. Jan. 19, 2022). Based on Adams, the court finds that E.R.'s initial answer was reasonable. See also Banks v. N.C. Dep't of Corrs., 2005 WL 8159269, at 1 (E.D.N.C. Apr. 15, 2005) (citing Herdlein Tech., Inc. v. Century Contractors, Inc., 147 F.R.D. 103, 104–05 (W.D.N.C. 1993)) (explaining that the "responding party must object to the court before responding in order to rely on the rule limiting the number of interrogatories"). At the same time, nothing in Adams precluded E.R. from later explaining in her response brief which of the specific interrogatories she believes caused the District to exceed the limit. Indeed, in Adams, the court considered a separate set of interrogatories and determined, based on the parties' arguments, that certain questions consisted of multiple subparts. 2022 WL 168783, at *4. Adams therefore does not excuse a failure to brief why certain interrogatories should count as distinct inquiries, as the court discusses below.

In determining whether subparts to questions should be considered as separate interrogatories, "'[a]n interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question, but an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of limitation." Mezu v. Morgan State Univ., 269 F.R.D. 565, 572–73 (D. Md. 2010) (citations omitted). District courts within the Fourth Circuit apply the test articulated in Kendall v. GES Exposition Services, 174 F.R.D. 684 (D. Nev. 1997). See, e.g., Adams, 2022 WL 168783, at *3. This lenient standard "provides that the court should determine whether 'a subpart is logically or factually subsumed within and necessarily related to the primary question.'" Id. (quoting Ginn v. Gemini, Inc., 137 F.R.D. 320, 322 (D. Nev. 1991)). Despite the leniency of the standard, however, courts will still deem a single interrogatory to be multiple interrogatories where it seeks admissions on "many different subjects." See Rawl v. S.C. Dep't of Soc. Servs., 2015 WL 6725169, at *3 (D.S.C. Nov. 3, 2015) (finding that the defendant's interrogatory requesting the bases for the plaintiff's denials in a request for admission was "really sixty-nine separate interrogatories because it relate[d] to many different subjects in [the defendant]'s Request for Admission").

In arguing that the District served thirty-three interrogatories, E.R. appears to be counting Interrogatory No. 3, which contains three subparts; Interrogatory No. 6, which contains four subparts; and Interrogatory No. 9, which contains eleven subparts. It remains unclear, however, because in her response to the motion to compel, E.R. only addresses Interrogatory No. 9, which she argues contains "eleven discrete subparts" numbered (a) through (k). ECF No. 14 at 2. E.R. did not note her belief that

5

Interrogatory Nos. 3 and 6 contained multiple distinct interrogatories until the hearing. Again, E.R. would not have waived her objections by arguing why those interrogatories contain multiple parts in her response brief.[2]  As such, the court solely focuses on analyzing the subparts contained in Interrogatory No. 9.

The District argues that Interrogatory No. 9 conforms to the Kendall standard because each subpart requests information relating to the same subject.  Specifically, the District asserts that each subpart in Interrogatory No. 9 requests "the facts and documents on which the Plaintiff relied [on] to support the allegations asserted in the Complaint." ECF No. 15 at 3.  Upon review, the court partially disagrees with the District and finds that some of the subparts in Interrogatory No. 9 are discrete interrogatories.  But the court also disagrees with E.R. and does not find that each of the eleven subparts constitutes a separate and distinct interrogatory.

To start, Interrogatory No. 9(a) asks E.R. to "State each fact and identify each document upon which you rely to support the allegations of your Complaint."  ECF No. 13-2 at 4.  Additionally, Interrogatory No. 9(b) asks:

> What do you contend that the Defendant did or did not do that supports the allegations in your Amended Complaint, and upon what documents or evidence will you rely in trial to support your contentions?  Include in your response a list of each and every statute, regulation, or standard, which you contend the Defendant violated as a proximate cause of the party's injuries.

Id.

Setting aside the issue of whether these two subparts are subsumed or related to each other and/or to the other subparts, both subparts (a) and (b) are overbroad contention

---

[2] In any event, the court has since reviewed Interrogatory Nos. 3 and 6 and finds that each item is meant to elicit details about a common theme: Interrogatory No. 3 about E.R.'s medical care and Interrogatory No. 6 about the physical or mental injuries she is alleged to have suffered.  See ECF No. 13-2 at 2–3.

interrogatories.  To be sure, "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  Fed. R. Civ. P. 33(a)(2).  However, "[c]ontention interrogatories that systematically track all of the allegations in an opposing party's pleadings, and that ask for each and every fact and application of law to fact that supports the party's allegations, are an abuse of the discovery process because they are overly broad and unduly burdensome."  Lucero v. Valdez, 240 F.R.D. 591, 594 (D.N.M. 2007) (internal quotation marks and citations omitted, and emphasis added).  Stated another way, "[c]ontention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents."  Id. (citations omitted).  Rather, contention interrogatories may ask for the material or principal facts that support a particular allegation.  See id. (citing Hiskett v. Wal-Mart Stores, Inc., 180 F.R.D. 403, 405 (D. Kan. 1998)).  Here, Interrogatory Nos. 9(a) and (b) are directed at all the allegations in the complaint and are therefore overly broad and unduly burdensome.  As such, the court strikes these two subparts before proceeding to the remaining subparts, and E.R. will not be required to respond to them.

The remaining subparts are more tailored, but the issue is that several of them run the gamut in terms of the subject matters that they cover.  By the District's own admission, the common thread holding many of the subparts together is that they relate to the allegations in the complaint.  See ECF No. 15 at 3 ("Each following subpart seeks more complete, specific detail regarding the allegations asserted in specific paragraphs of the Complaint . . . .").  That is quite the broad umbrella; after all, any proper discovery

request should theoretically be related to the allegations in the complaint.  See Kendall, 174 F.R.D. at 685 ("If the questions are relevant to the case, it could be argued that all the interrogatories are 'related.'").  As the court in Kendall went on to explain, "[p]robably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question.  Or, can the subsequent question stand alone?  Is it independent of the first question?"  Id.

Here, instead of establishing secondary questions to a single theme, many subparts or groups of subparts in Interrogatory No. 9 stand alone.  For example, Interrogatory No. 9(c) asks E.R. to "Set forth in detail the bases for the party's allegations that the Defendant was grossly negligent."  ECF No. 13-2 at 4.  This is likely[3] a proper contention interrogatory—as reflected by the court's discussion above—since it is tailored to the allegation that the District was grossly negligent.  But that does not mean it is fairly characterized as a primary question for the remaining subparts.  None of the remaining subparts directly reference E.R.'s claim of gross negligence, and again, it is not enough to argue that the subparts are connected simply because they seek information about "allegations asserted in specific paragraphs of the Complaint."  ECF No. 15 at 3.

Nevertheless, when construed leniently, certain categories of subparts appear as though they can be grouped together because they are sufficiently "subsumed and related."  Kendall, 174 F.R.D. at 685.  The court finds that the subparts can be grouped together as shown below:

---

[3] This subpart may still be considered somewhat broad (there are only two causes of action in the complaint), but the court will permit it based on Rule 33(a)'s general standard for leniency.

1. Interrogatory 9(c), as discussed above, is a contention interrogatory about E.R.'s gross negligence claim.

2. Identity of Male Students – Interrogatory No. 9(d) requests the identities of the three male students who allegedly sexually assaulted E.R. It further requests the date(s) and location of each alleged incident, along with whether the incident was reported, the identity of the individual(s) making the report, a summary of the report, and the identity of any administrators to whom the report was made. ECF No. 13-2 at 4–5. E.R. does not argue that subpart (d) itself consists of additional subparts, and in any event, the court finds that the additional requests in this subpart are proper examples of secondary questions to the primary question.

3. Bullying, Harassment, and Sexual Harassment

    a. Interrogatory No. 9(e) requests the nature of the bullying, harassment, and sexual harassment that allegedly took place after word of the alleged incident(s) spread around the school, as well as the dates of the alleged conduct and details about any reports made. Id. at 5.

    b. Interrogatory No. 9(i) requests the identity of "Female 1" and "her friends" as described in the complaint, referring to a female student who allegedly bullied, harassed, and sexually harassed E.R. after allegedly learning that "Male 3" (who "Female 1" had been in a relationship with) had raped E.R. Id.; see Compl. ¶ 33–34. Construed liberally, both subparts here relate to allegations about the behavior exhibited toward E.R. after the alleged incidents and are relevant to the District's alleged failure to stop the behavior.

4. Identity of School Administrators Who Allegedly Failed to Respond

    a. Interrogatory No. 9(f) requests the identity of the "administrators" and "agents and employees" of the District, as referenced in the complaint, as well as other details of the reports that E.R. and/or her mother made to those individuals regarding the alleged bullying, harassment, and sexual harassment that E.R. received. ECF No. 13-2 at 5.

    b. Interrogatory No. 9(g) requests the identity of the "employee and/or agent of BCSD" who was allegedly the only one to take any action and did so in an allegedly deficient manner.

    c. Interrogatory No. 9(j) requests the identity of the "agent or employee of BCSD" who allegedly told E.R. not to report the rape by "Male 3" because he would lose his football scholarship, which led to her refusal to provide a statement to local police. Id. at 6. Viewed liberally, each of these three subparts requests information

       about agents or employees of the District who either failed to act or did so in poor fashion as it related to E.R.'s complaints to the school.

5. Separate Allegation About "Male 1" – Interrogatory No. 9(h) requests the source of the information for the allegation that "Male 1" sexually assaulted a different student at school and was subsequently suspended. Id.

6. Identity of Administrators Who Allegedly Failed to Implement Accommodations – Interrogatory No. 9(k) requests the identity of the "agents and employees of BCSD" who allegedly did not "honor or follow" the District's 504 Plan for granting academic accommodations and the exact nature of the accommodations that E.R. alleges were not granted. Id.[4]

In sum, the court finds that Interrogatory No. 9 consists of six separate interrogatories. This brings the total number of interrogatories to twenty-two, up from seventeen. To the extent the District argues that the subparts are connected beyond merely requesting information about the allegations in the complaint, the court disagrees. For example, although "category six" concerns school administrators just like the requests in "category four," E.R.'s allegations about the District's failure to provide accommodations is separate from her allegations about the District's negligent response to the incidents at school. Similarly, the District's interrogatories about E.R.'s claims regarding the school administrator's responses (or lack thereof) differ from the interrogatories seeking to identify the bullying or harassment that took place. In other words, "category four" is not logically and factually subsumed within "category three," and vice-versa, because each one "may be answered without reference to [the other]."

---

[4] Neither party necessarily conducted a rog-by-rog analysis of the subparts, but based on Adams and similar cases, the court finds that this approach is proper. See, e.g., Adams, 2022 WL 168783, at *4 (individually reviewing whether certain subparts were bound by a theme or should be considered separate); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 2002 WL 534459, at *3 (W.D. Va. Mar. 18, 2002) (same).

Am. Chiropractic, 2002 WL 534459, at *3; cf. Mezu, 269 F.R.D. at 573 (determining that an interrogatory asking the plaintiff for her hire date, salary, supervisors, and reason for changing positions consisted of different interrogatories).

This approach also accounts for the leniency of Rule 33. Some courts have gone as far as finding that interrogatories seeking different details of a select event or topic constitute separate interrogatories. See, e.g., E.E.O.C. v. N.M. Corrs. Dep't, 2016 WL 9777238, at *4 (D.N.M. Sept. 30, 2016) (finding that an interrogatory seeking (a) identification of individual, (b) why that person was selected, (c) the details of the communication, and (d) all related documents, altogether constituted four distinct interrogatories). If the court followed that approach, several of the District's subparts would likely contain even further subparts. At the same time, the federal rules advisory committee has indicated that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Fed. R. Civ. P. 33(a) advisory committee's note to 1993 amendment. The court adopts a middle-ground approach that balances the missives of Rule 33(a) with the District's need to identify relevant information for further discovery. To summarize, the court strikes subparts (a) and (b), construes the first set of interrogatories as consisting of twenty-two interrogatories, and compels E.R. to respond to them by June 15, 2023. The District will be permitted only three additional interrogatories at most, absent a showing of good cause.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion as set forth in this order.

**AND IT IS SO ORDERED.**

                                                **DAVID C. NORTON**
                                                **UNITED STATES DISTRICT JUDGE**

**May 23, 2023**
**Charleston, South Carolina**